CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2018 JUN 29  PH 2: 09

DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### ABILENE DIVISION

| | | |
|---|---|---|
| **SARAH B.,**[1] | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No. 1:17-CV-0080-BL** |
| | § | |
| **NANCY A. BERRYHILL,** | § | |
| **Acting Commissioner of Social Security,** | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION

Pursuant to 42 U. S. C. § 405(g), Plaintiff/Claimant seeks judicial review of a decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.[2] *See* Compl. (doc. 1). The Commissioner has filed an answer, *see* Def.'s Answer (doc. 10), and a certified copy of the transcript of the administrative proceedings, *see* SSA Admin. R. [hereinafter "R."] (doc. 12), including the hearing before the Administrative Law Judge ("ALJ"). The parties have briefed the issues. *See* Pl.'s Appeal (doc. 15); Def.'s Br. (doc. 16); Pl.'s Reply (doc. 17). The United States District Judge referred the case to the undersigned pursuant to 28 U.S.C. § 636 and the parties have not consented to proceed before a United States Magistrate Judge. After considering the pleadings, briefs, and administrative record, the undersigned recommends that the Court affirm the Commissioner's decision.

## I. BACKGROUND

Plaintiff filed an application for DIB in March 2014, alleging a March 10, 2014 onset of disa-

---

[1]To protect privacy concerns of plaintiffs in social security cases, the undersigned identifies the Plaintiff only by first name and last initial.

[2]Title II governs disability insurance benefits. *See* 42 U.S.C. §§ 401-34. The Court will often refer to Plaintiff as Claimant, a designation used in social security cases.

bility. R. 128-29. The record shows that, at that time, she was not still disabled and that her disa-

bility ended in March 2014. *See* R. 128. However, on May 28, 2014, she amended her application

to state that she remains disabled. *See* R. 130. She identified various conditions that limit her ability

to work: (1) bipolar II, (2) rheumatoid arthritis, (3) hypothyroidism, (4) migraines, (5) narrowing C5-

C6 with numbness in elbow and left hand, and (6) fibromyalgia. R. 145. She later reported suicidal

ideation. *See* R. 183. Her date of last insured ("DLI") is December 31, 2018.[3] *See* R. 142. There-

fore, the most relevant time period for her application and the Court's review commenced in March

2014 and continues through the date of the final decision of the Commissioner.

The Commissioner denied the application initially and on reconsideration. *See* R. 54-83.

On September 17, 2015, Administrative Law Judge Larry C. Marcy held a hearing on Plaintiff's

claim. *See* R. 27-53. On November 25, 2015, the ALJ issued an unfavorable decision finding that

Plaintiff was not disabled and was capable of performing past relevant work as a secretary and clerk

typist. R. 9-21. Applying the sequential, five-step analysis set out in the regulations (20 C.F.R. §

404.1520(a)(4))[4] the ALJ first determined that Plaintiff had not engaged in substantial gainful activ-

ity since the alleged onset date. R. 11. The ALJ next determined that Plaintiff suffers from the fol-

lowing severe impairments: bipolar disorder, depressed type; rheumatoid arthritis; hypothyroidism;

fibromyalgia; obesity; and migraines. *Id.* Third, the ALJ found that Plaintiff did not have an

impairment or combination of impairments that met or equaled the severity of any impairment in the

---

[3]The ALJ calculated the DLI as December 31, 2019. *See* R. 11. Because neither date has passed, the Court has no need to resolve the discrepancy.

[4]In March 2017, the Social Security Administration amended many regulations. However, the pertinent version for this case is the one in effect when the ALJ issued his decision. *See Young v. Berryhill*, No. 16-20786, 2017 WL 2312859, at *2 n.3 (5th Cir. May 26, 2017) (per curiam). Except to bring attention to the effective date of an amended provision, this recommendation will cite to the applicable version without parenthetical year information.

listings.[5]  R. 12-14.

The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC")[6] to

perform light work as defined in 20 C.F.R. § 404.1567(b),[7] except that she could "only frequently

reach overhead and handle and finger with the bilateral upper extremities."  R. 14.  With respect to

her mental RFC, the ALJ found that she could (1) "understand to carry out 'detailed but uninvolved'

written or oral instructions involving a few concrete variables in or from standardized situations,"[8]

(2) "respond appropriately to changes in a routine work setting," (3) "concentrate for extended per-

iods," and (4) engage in "frequent contact with the public and coworkers."  *Id.*

Based upon the RFC determination and testimony from a vocational expert ("VE") about the

---

[5]Section 404.1525 explains the purpose and use of the listings of impairments.

[6]Section 404.1545(a)(1) explains that a claimant's RFC "is the most [he or she] can still do despite [his or her]
limitations."  When a case proceeds before an ALJ, it is the ALJ's sole responsibility to assess the claimant's RFC.  20
C.F.R. § 404.1546(c).  However, that assessment must be "based on all of the relevant medical and other evidence" of
record.  *Id.* § 404.1545(a)(3).

[7]The regulations address physical exertion requirements and explain:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting
> or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may
> be very little, a job is in this category when it requires a good deal of walking or
> standing, or when it involves sitting most of the time with some pushing and pulling
> of arm or leg controls.  To be considered capable of performing a full or wide range
> of light work, [the claimant] must have the ability to do substantially all of these act-
> ivities.  If someone can do light work, we determine that he or she can also do sed-
> entary work, unless there are additional limiting factors such as loss of fine dexterity
> or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).  In general, light work "requires being on one's feet" for six hours of an eight-hour workday
while "[s]itting may occur intermittently during the remaining time."  Titles II and XVI:  Determining Capability to Do
Other Work – the Medical-Vocational Rules of Appendix 2, SSR 83-10 (PPS-101), 1983 WL 31251, at *5-6 (S.S.A.
1983).

[8]The transcript of the hearing indicates that the ALJ set out mental limitations including that she "could carry
out details that had involved written or oral instructions."  R. 50.  Plaintiff accepts that this is merely a transcription error
and that the limitation included details that had "uninvolved written or oral instructions."  *See* Pl.'s Appeal at 4 n.1.  The
Court should likewise accept that interpretation of the limitations set out to the vocational expert.

exertional demands and skill requirements of Plaintiff's prior jobs, the ALJ concluded that Plaintiff could perform her past relevant work as a secretary and clerk typist. R. 20-21. Thus, at Step 4 of the evaluative sequence, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act between March 10, 2014, and the date of the ALJ's decision. R. 21.

The Appeals Council received and considered an attorney brief (Ex. 15E) when it denied review on March 24, 2017. *See* R. 1-4. The ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating that the Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

Plaintiff commenced this social security appeal on May 23, 2017. *See* Compl. She purports to present a single issue for review, i.e., whether substantial evidence supports the decision to deny her benefits, but breaks that issue into two subparts: (1) whether the ALJ properly considered all of her severe impairments when determining her RFC and (2) whether the ALJ properly determined that she retained the capacity to return to her prior work. *See* Pl.'s Appeal at 1-2.

## II. LEGAL STANDARD

In general,[9] a person is disabled within the meaning of the Social Security Act, when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). "'Substantial gainful activity' is work activity involving significant physical or mental

---

[9]The Act provides an alternate definition of disability for blind individuals who are fifty-five years of age or older. *See* 42 U.S.C. § 423(d)(1)(B). This provision is inapplicable on the current facts.

abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20

C.F.R. § 404.1572(a)-(b)). To evaluate a disability claim, the Commissioner employs the previously

mentioned

> five-step sequential analysis to determine whether (1) the claimant is presently work-
> ing; (2) the claimant has a severe impairment; (3) the impairment meets or equals an
> impairment listed in appendix 1 of the social security regulations; (4) the impairment
> prevents the claimant from doing past relevant work; and (5) the impairment prevents
> the claimant from doing any other substantial gainful activity.

*Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). If, at any step, the Commissioner determines

that the claimant is or is "not disabled, the inquiry is terminated." *Id.* at 448. The Commissioner

must assess the claimant's RFC before proceeding to Steps 4 and 5. *Perez v. Barnhart*, 415 F.3d

457, 461 (5th Cir. 2005). For Steps 1 through 4, the claimant has the burden to show disability, but

the Commissioner has the burden at Step 5 to "show that there is other substantial work in the

national economy that the claimant can perform." *Audler*, 501 F.3d at 448. If the Commissioner car-

ries that Step 5 burden, "the burden shifts back to the claimant to rebut th[e] finding" that he or she

can perform other work that is available in the national economy. *Newton v. Apfel*, 209 F.3d 448,

453 (5th Cir. 2000).

"Judicial review of the Commissioner's decision to deny benefits is limited to determining

whether that decision is supported by substantial evidence and whether the proper legal standards

are applied." *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015) (quoting *Boyd v. Apfel*, 239 F.3d 698,

704 (5th Cir. 2001)). "Substantial evidence is 'such relevant evidence as a reasonable mind might

accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a prepond-

erance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton*, 209

F.3d at 452). "In applying the substantial evidence standard, the court scrutinizes the record to deter-

mine whether such evidence is present, but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez*, 415 F.3d at 461. The courts neither "try the questions *de novo*" nor substitute their "judgment for the Commissioner's, even if [they] believe the evidence weighs against the Commissioner's decision." *Masterson*, 309 F.3d at 272. The Commissioner resolves conflicts of evidence. *Sun*, 793 F.3d at 508.

## III. ANALYSIS

This appeal raises the following issues in the context of substantial evidence: (1) whether the ALJ properly considered all of her severe impairments when determining her RFC and (2) whether the ALJ properly determined that she retained the capacity to return to her prior work. *See* Pl.'s Appeal at 1-2. The second issue requires consideration as to whether the ALJ properly evaluated the medical evidence. *See id.* at 4-8.

## A. Reconciliation of Step 2 Severity Finding and RFC Determination

Claimant argues that, although the ALJ found severe impairments, including migraine headaches, he made no further mention of her migraines and did not assess how they would affect her ability to work. Pl.'s Appeal at 3. The Commissioner contends that substantial evidence supports the ALJ's RFC determination and remand is inappropriate on this issue because Claimant points to "no credible evidence that she has functional limitations that exceed the limitations that the ALJ set forth in his residual functional capacity." Def.'s Br. at 5.

### 1. Legal Principles

At Step 2 of the evaluative sequence, the ALJ will find the claimant not disabled, unless the ALJ finds that the claimant has a severe impairment. *See* 20 C.F.R. § 404.1520(a)(4)(ii). The regulations define a severe impairment as "any impairment or combination of impairments which signifi-

6

cantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c).

This definition is consistent with how the Social Security Administration defines non-severe impairments:

> (a) Non-severe impairment(s). An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.
>
> (b) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include—
>
>> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>>
>> (2) Capacities for seeing, hearing, and speaking;
>>
>> (3) Understanding, carrying out, and remembering simple instructions;
>>
>> (4) Use of judgment;
>>
>> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>>
>> (6) Dealing with changes in a routine work setting.

*Id.* § 404.1521 (effective through Mar. 26, 2017).[10]

However, one cannot merely rely on the regulatory definitions to properly understand the Step 2 severity standard. There is a lengthy historical basis for the severity requirement and what it actually means to be a severe or non-severe impairment under Fifth Circuit precedent. *See Mills v. Berryhill*, No. 4:16-CV-0331-Y-BL, 2017 WL 3972009, at *7 (N.D. Tex. Aug. 3, 2017) (recommendation of Mag. J. setting out detailed history) *adopted by* 2017 WL 3891391 (N.D. Tex. Sept. 6, 2017). As recently emphasized by the Fifth Circuit, the specific meaning of "severe impairment"

---

[10]Effective March 27, 2017, § 404.1521 was renumbered to § 404.1522 without textual change.

may be "somewhat surprising" under its binding precedent. *Salmond v. Berryhill*, ___ F.3d ___, ___, No. 17-10161, 2018 WL 3015052, at *3 (5th Cir. June 18, 2018).  As has been the case since the Fifth Circuit decided its often-cited decision in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), "[a]n impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1101.  "Re-stated, an impairment is severe if it is anything more than a 'slight abnormality' that 'would not be expected to interfere' with a claimant's ability to work." *Salmond*, 2018 WL 3015052, at *3 (quoting *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000)).  Under Fifth Circuit precedent, a claimant need only "make a *de minimis* showing" to proceed past Step 2 of the evaluative sequence. *Id.* (citing *Anthony v. Sullivan*, 954 F.2d 289, 293 n.5 (5th Cir. 1992)).

While finding that a claimant has a severe impairment is insufficient of itself to qualify for disability benefits, it is required to proceed past the second step mandated by the social security regulations. *Shipley v. Sec'y of Health & Human Servs.*, 812 F.2d 934, 935 (5th Cir. 1987) (per curiam).  A severity finding at Step 2 does not foreclose an RFC assessment that a claimant retains the capacity to perform a range of work and a severity finding is "not necessarily inconsistent with [such an RFC] finding." *Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001).  In short, "the consideration of whether a claimant's impairments are severe at step two is a different inquiry than an ALJ's assessment of the claimant's RFC." *Winston v. Berryhill*, No. 3:16-CV-419-BH, 2017 WL 1196861, at *13 (N.D. Tex. Mar. 31, 2017), *appeal filed*, No. 17-11173 (5th Cir. Oct. 4, 2017).

The applicable regulation explains that RFC sets out the most that a person can do despite limitations resulting from impairments. 20 C.F.R. § 404.1545(a)(1).  "Ordinarily, RFC is an assess-

ment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). To constitute "a regular and continuing basis," requires working "8 hours a day, for 5 days a week, or an equivalent work schedule." *See id.* An RFC assessment should consider "only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." *Id.* When assessing an individual's RFC, administrative adjudicators consider "all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' – i.e., opinions about what the individual can still do despite his or her impairment(s) – submitted by an individual's treating source or other acceptable medical sources." *Id.* at *2.

## 2. Does Substantial Evidence Support the ALJ Decision?

When setting out the applicable law, the ALJ in this case quoted the regulatory definition of severe (§ 404.1520(c)) and defined non-severe consistent with social security rulings interpreting § 404.1521 (now renumbered as § 404.1522). *See* R. 10. When setting out his findings of fact and conclusions of law, the ALJ recognized the *Stone* standard and specifically stated that a "medically determinable impairment is not severe if it is only a 'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work irrespective of age, educate, or work experience." R. 11. After reviewing the evidence, the ALJ found six impairments (bipolar disorder, arthritis, hypothyroidism, fibromyalgia, obesity, and migraines) that "are more than slight abnormalities having such an effect on the claimant, they are expected to interfere with her ability to work and are thus severe." *Id.* The ALJ made no specific

9

finding that any of the six impairments significantly limited Claimant's ability to do basic work activities. *See id.* But he was satisfied that the Claimant had made the requisite *de minimis* showing to avoid a Step 2 finding of non-disability.

After finding that Claimant had no impairment or combination of impairments that satisfied the criteria for any listing at Step 3, R. 12-14, the ALJ assessed Claimant's physical and mental RFC to perform a limited range of light work, *see* R. 14-20. The ALJ specifically referred to completed functional reports (Exs. 5E (R. 170-80) and 9E (R. 190-97)) at Step 3 and when addressing Claimant's RFC. *See* R. 13-14. In these reports, Claimant stated how her impairments affect various abilities. *See* R. 173, 178, 195.

Claimant stated in a functional report dated May 6, 2014, that migraines send her home and to bed or to the doctor for a shot. R. 173. According to Claimant, her impairments affect the following abilities: walking, stair climbing, using hands, following instructions, memory, concentration, completing tasks, and getting along with others. R. 178. She attributed the walking, climbing, and hand limitations to her arthritis. *Id.* With respect to the limitations with memory, instructions, getting along, and concentration she stated she is "foggy" and "more argumentative" with her boss and daughter. *Id.* She also stated that she is just "space[d] out" regarding memory and concentration. *Id.* She attributed no specific limitation to her migraine headaches. *See id.*

In a functional report dated August 18, 2014, she stated that her impairments limit her ability to work because she either sleeps twelve to fourteen hours on medication or she stays awake "until exhaustion knocks [her] out"; she cannot concentrate; she just stares into space, not thinking about anything; she has no motivation or desire to do anything. R. 190. When listing abilities that her impairments limit, she omitted following instructions and getting along with others but added

understanding, lifting, squatting, bending, and kneeling. *See* R. 195. She attributed her physical limitations to arthritis and the limitations with memory, concentration, understanding, and finishing tasks to depression. *See id.* She again attributed no specific limitation to migraines. *See id.*

These completed disability reports are consistent with her testimony at the September 17, 2015 hearing before the ALJ. After her attorney stated that her impairments are "primarily mental" and identified bipolar and depression as the relevant impairments, *see* R. 29-30, Claimant testified that she "started having problems with focusing and memory" the last couple of years she worked, R. 32. As an example of a lack of focus, she described "drifting off" and being easily distracted which would slow her work. *See id.* She further testified that she has a migraine headache "[o]nce a month to about every six weeks." R. 41, 49. But she has medication that she takes "as soon as" she gets one. R. 41. She addresses her migraines with medication (Relpax), propping herself up in bed, alternating between heat and cold, and getting a shot "when it gets bad." *Id.*

After specifically considering the functional reports, other evidence of record, and Claimant's allegations, the ALJ found her "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but found her "statements concerning the intensity, persistence and limiting effects of these symptoms [only] partially credible." R. 15. He then discussed medical records and opinions of Claimant's treating psychiatrist, Shanthi Thangam, M.D.,[11] R. 15-17, and noted "problems" with these opinions, including inconsistencies with treatment notes, contradictions within records, and lack of diagnostic support, *see* R. 18. With respect to Claimant's mental impairments, the ALJ accorded more weight to the state agency expert at the reconsideration

---

[11]Dr. Thangam is board certified in adult psychiatry and treated Claimant only for her mental impairments. *See,* *e.g.,* R. 515.

level[12] than to Dr. Thangam or the agency expert at the initial determination. *See* R. 18-20. Similarly, the ALJ found that the evidence of record did not support a finding of disability with regard to Claimant's physical impairments, but did support finding Claimant limited to light exertional level with additional limitations of frequent handling and fingering. *See id.*

The ALJ's found that Claimant's RFC permitted her to perform light work with some additional limitations regarding reaching overhead and handling and fingering with the bilateral upper extremities. R. 14. The RFC assessment also lists four findings regarding mental limitations from her impairments. *See id.* The ALJ found that she can (1) "understand to carry out 'detailed but uninvolved' written or oral instructions involving a few concrete variables in or from standardized situations"; (2) "respond appropriately to changes in a routine work setting," (3) "concentrate for extended periods," and (4) "have frequent contact with the public and coworkers." *Id.* According to the ALJ, Claimant was limited to light work based upon her rheumatoid arthritis, fibromyalgia, and obesity. R. 20. Her arthritis and fibromyalgia further limited her abilities to reach overhead and handle/finger with upper extremities. *See id.* The ALJ attributed Claimant's limitations regarding instructions and changes in routine work settings solely to her bipolar disorder. *See id.* Without identifying a particular impairment, the ALJ then stated: "She can concentrate for extended periods. Finally, considering the effects of her mental health symptoms, she can only frequently have interpersonal relationships in contact with the public and coworkers." *See id.*

While determining Claimant's RFC, the ALJ specifically noted the migraine impairment. *See* R. 15. In particular, the ALJ stated: "She has migraine headaches about every 6 weeks. She

---

[12]Two state agency medical experts signed the reconsideration decision at various points – Scott Spoor, M.D., and Thomas Geary, Ph.D. *See* R. 67-82. Within the context of the ALJ's decision it is clear that the ALJ is referring to Dr. Geary. *See* R. at 18-20

takes prescriptive medications for this. However, at times, she has to go to the emergency room for a shot." *Id.* This statement regarding Claimant's migraines appears fairly consistent with the information she provided in the completed disability reports and her testimony before the ALJ.

To the extent Claimant asserts that the ALJ made no further mention of her migraine impairment after Step 2, she is mistaken. The record clearly reflects that the ALJ mentioned her migraine impairment when assessing her RFC. Nevertheless, from the RFC determination, it appears that, at no point, does the ALJ specify how Claimant's migraine impairment affects her RFC or ability to work. That seems hardly surprising given Claimant's own statements regarding how her impairments affect her functional abilities and ability to work. She did not attribute any physical or mental limitation to her migraine headaches. She merely states that she has a migraine headache about once a month to six weeks. Her statements indicate that medication helps and that she will resort to bedrest and visiting a doctor for a shot when necessary. When assessing Claimant's RFC, the ALJ specifically noted those statements and numerous others concerning her symptoms and limiting effects. The ALJ also specifically stated that he found Claimant's statements about the intensity, persistence, and limiting effects of her symptoms only partially credible. This finding impacts the ALJ's ultimate RFC assessment.

Claimant, furthermore, has pointed to no medical record which supports finding that her migraine impairment limits her beyond the RFC assessed by the ALJ. Moreover, while the medical record shows that Claimant has reported experiencing headaches ("HA") and migraine headaches,[13]

---

[13] *See* R. 394-95 (reported "having migraine headaches at least one time every six weeks" at an April 28, 2014 psychological examination); 404-07 (March 27, 2014 complaint of HA resulting in migraine diagnosis and injection); 421 (January 21, 2014 report of HA with neck pain radiating down her arm); 426 (December 2, 2013 report of daily HA at back of the head); 432-34 (October 8, 2013 notation of past history of migraine headaches and complaints of HA twice weekly and migraines every 4-6 weeks); 443 (July 1, 2013 primary complaint of fatigue but also reported (1) a prescription that caused "bad headaches and hangover type feeling in the morning" and (2) daily headaches that had

nothing in the medical record shows that any physician attributed any limitation to her migraine headaches. Based on the evidence of record, substantial evidence appears to support the ALJ's decision not to attribute a specific limitation to Claimant's migraine headaches.

### 3. Did the ALJ Err By Not Attributing Any Limitation to Claimant's Migraines?

Although Claimant frames the issue as one of substantial evidence, the Court should consider whether the failure of the ALJ to attribute any specific limitation to Claimant's severe migraine impairment constitutes reversible error. "Federal courts in Texas have found that when impairments are identified as severe at step two but an RFC does not include any limitations for those impairments, the RFC in effect contradicts the step two finding." *Winston v. Berryhill*, No. 3:16-CV-419-BH, 2017 WL 1196861, at *12 (N.D. Tex. Mar. 31, 2017), *appeal filed*, No. 17-11173 (5th Cir. Oct. 4, 2017). This type of inconsistency may warrant remand, but courts must keep in mind the differences between a Step 2 severity finding and the RFC assessment. *See id.* at 12-13. In fact, after considering numerous cases addressing the issue, one court has unambiguously stated that "the prevailing rule is that an ALJ does not err solely because [he or] she finds an impairment 'severe'

---

begun two weeks earlier and tended "to be 7/10 in intensity" with "an aching and throbbing quality" but were "not accompanied by nausea or photophobia"); 453-55 (May 6, 2013 complaint of HA resulting in migraine diagnosis and an injection); 461 (March 13, 2013 primary complaint of fatigue but also reported daily headaches that had begun two weeks earlier and tended "to be 7/10 in intensity" with "an aching and throbbing quality" and "are are [sic] accompanied by nausea or photophobia"); 469-72 (February 28, 2013 complaint of HA among other things resulting in several diagnoses including migraine); 473-75 (December 11, 2012 complaint of HA with notation "10 HA per month" resulting in migraine diagnosis, injection, and prescription for Relpax); 494-95 (May 19, 2014 notation showing past history of migraines but current denial of headaches); 525 (August 25, 2014 notation of report of migraine headaches); 527 (October 1, 2014 notation that pertinent medical history includes migraines); 550 (same record as R. 525); 570-74 (August 31, 2015 notation of migraine HA in past medical and complaints of HA twice a week but no impression or recommendation regarding migraines); 583 (reiterates August 31, 2015 notation and also lists an April 2, 2015 notation of HA complaints three times per week); 584 (shows notation of February 26, 2015 complaint of HA four times per week and notation of May 19, 2014 denial of HA); 585 (noting December 2, 2013 report of daily HA at back of the head and October 8, 2013 report of HA twice weekly and migraines every 4-6 weeks); 589-94 (April 2, 2015 notation that Claimant "has headaches, about 3-4 times/week; the pain is located at the back of the head, and radiates to the side of the head; the pain is the same throughout the day" and notation that Claimant "has had more headaches" but no impression or recommendation regarding migraines); 600-06 (essentially the same as R. 589-94 but HA four times per week).

14

at step two but does not attribute any limitation to that impairment in assessing the claimant's RFC." *Davis v. Comm'r of Soc. Sec.*, No. 6:12-CV-1694-ORL-36, 2013 WL 6182235, at *6 (M.D. Fla. Nov. 25, 2013) (adopting recommendation of Mag. J.). The Fifth Circuit's recent restatement that Step 2 only requires "a *de minimis* showing," *Salmond v. Berryhill*, ___ F.3d ___, ___, No. 17-10161, 2018 WL 3015052, at *3 (5th Cir. June 18, 2018), provides an apt reminder that courts must vigilantly keep in mind the differences between an assessment of RFC and a Step 2 severity finding. Non-binding decisions lose persuasive value when the court fails to adequately account for these differences.

As is often the case with social security issues, the circumstances of a given case may impact whether the ALJ has committed reversible error by failing to include in his or her RFC assessment any limitation resulting from an impairment that the ALJ found to be severe.[14] Some decisions express an hard-line approach that "[w]ithout some explanation in the record as to how plaintiff can suffer from a severe impairment, which by definition must have more than a minimal effect on plain-

---

[14]*Compare Walker v. Colvin*, No. 3:14-CV-1498-L (BH), 2015 WL 5836263, at *15 (N.D. Tex. Sept. 30, 2015) (finding that the ALJ had committed reversible error on the facts then before the court after discussing cases on both sides of the issue); *Martinez v. Astrue*, No. 2:10-CV-0102, 2011 WL 4128837, at *7 (N.D. Tex. Sept. 9, 2011) (recommendation of Mag. J. finding reversible error), *adopted by* 2011 WL 4336701 (N.D. Tex. Sept. 15, 2011); *Norman v. Astrue*, No. SA-10-CA-849-XR, 2011 WL 2884894, at *5 (W.D. Tex. July 18, 2011) (finding reversible error when medical evidence showed improvement of severe impairment with treatment but there was "no medical testimony, medical opinion, or other evidence that contradicts" claimant's assertions that his severe impairment limited "his ability to sustain substantial gainful employment") *with Winston*, 2017 WL 1196861, at *12-14 (finding "no inconsistency between the ALJ's step 2 findings and her RFC determination" because the ALJ had explicitly considered the impact of her severe impairments); *Gonzalez v. Colvin*, No. 4:12-CV-641-A, 2014 WL 61171, at *6-7 & n.9 (N.D. Tex. Jan. 6, 2014) (adopting recommendation of Mag. J. distinguishing *Norman* and finding no reversible error when ALJ failed to set forth any specific limitation in his RFC assessment relating solely to a Step 2 severe impairment of the claimant's left wrist but found that other limitations accounted for that severe wrist impairment and further noted that no medical evidence indicated that the severe wrist impairment limited the claimant's ability to sustain any and all gainful employment); *Carnley v. Colvin*, No. 3:12-CV-3535-N-BF, 2013 WL 5300674, at *9 (N.D. Tex. Sept. 20, 2013) (accepting recommendation of Mag. J. that distinguished *Martinez* on grounds that the VE had considered seizure limitations even though the ALJ had not incorporated such limitations in the RFC determination); *Martinez v. Colvin*, No. 4:12-CV-542-A, 2013 WL 5227060, at *7 n.17 (N.D. Tex. Sept. 16, 2013) (distinguishing *Norman* and the 2011 *Martinez* case on grounds that the medical evidence did not support any additional limitation); *Adams v. Colvin*, No. 4:12-CV-490-A, 2013 WL 5193095, at *9 n.6 (N.D. Tex. Sept. 13, 2013) (same).

tiff's ability to work and why such severe impairment would not have had any limitation on plaintiff's ability to [perform] the jobs identified by the vocational expert, the decision cannot stand." *Martinez v. Astrue*, No. 2:10-CV-0102, 2011 WL 4128837, at *7 (N.D. Tex. Sept. 9, 2011) (recommendation of Mag. J.), *adopted by* 2011 WL 4336701 (N.D. Tex. Sept. 15, 2011); *accord Campbell v. Berryhill*, No. 3:15-CV-3913-N (BH), 2017 WL 1102797, at *12 (N.D. Tex. Feb. 24, 2017) (recommendation of Mag. J.) *accepted by* 2017 WL 1091651 (N.D. Tex. Mar. 23, 2017). Recognizing the differing judicial decisions on this issue and without making any definitive determination, the undersigned agreed that

> [t]he circumstances of some cases require 'some explanation in the record as to how [a claimant] can suffer from a severe impairment, which by definition must have more than a minimal effect on the [claimant's] ability to work and why such severe impairment would not have had any limitation" on the claimant's ability to work.

*Mesecher v. Berryhill*, No. 4:15-CV-0859-BL, 2017 WL 998373, at *10 (N.D. Tex. Mar. 15, 2017) (quoting *Martinez*, 2011 WL 4128837, at *7).

In some cases where the court found a contradiction, the court specifically noted that the ALJ had found the severe impairment caused significant limitation in the claimant's ability to work. *See Walker v. Colvin*, No. 3:14-CV-1498-L (BH), 2015 WL 5836263, at *15 (N.D. Tex. Sept. 30, 2015); *Martinez*, 2011 WL 4128837, at *7. The ALJs in those cases thus found that the relevant impairments satisfied the regulatory definition for severity. This is a highly relevant fact in light of the differences between the *Stone* severity standard and severity standard set out in the regulations. Courts should remain mindful of this relevant distinction when considering the facts before them. The ALJ in this case did not find that Claimant's migraine impairment significantly limited her ability to work.

In addition, in some "cases where reviewing courts have found that an ALJ did not err in finding severe impairments at step two and not attributing any limitation to those impairments in the RFC assessment, the ALJs considered the limitations that were encompassed by the severe impairments or accounted for the limitations in some respect before making a disability finding." *Campbell*, 2017 WL 1102797, at *11 (citing three cases). Because the ALJ in this case expressly considered Claimant's severe migraine impairment when assessing her RFC, he did not err when he failed to attribute a specific limitation to that severe impairment. *See Winston*, 2017 WL 1196861, at *14. The decision of the ALJ provides a sufficient explanation showing that he considered the severe impairment in making the RFC assessment notwithstanding the failure to specify a limitation directly attributable to her migraine headaches. *See id.*

Furthermore, because the ALJ considered statements of Claimant regarding her migraine impairment but attributed no specific physical or mental limitation to it, a reasonable conclusion is simply that the ALJ found that the migraine impairment does not impose any greater physical or mental limitation than her other impairments. Although federal courts, "on appellate review, cannot speculate as to what the ALJ may have considered, *Martinez*, 2011 WL 4128837, at *7, this case does not require such speculation and the federal courts may make reasonable conclusions and inferences when warranted by the evidence of record.[15] This reasonable conclusion explains how the migraine impairment may qualify an impairment as severe at Step 2 without imposing additional limitations during the RFC assessment. Moreover, under the *Stone* severity standard, it does not take

---

[15] When determining whether substantial evidence supports a decision of the ALJ, the courts examine the record as a whole to determine whether it provides "such relevant evidence" that "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *Howard v. Colvin*, No. 1:12-CV-006-BL, 2013 WL 687072, at *3 (N.D. Tex. Feb. 26, 2013). Likewise, in the context of the current issue, it appears permissible for the Court to rely on a reasonable inference or conclusion supported by the record when addressing the alleged error of the ALJ.

much of an impairment to satisfy Step 2.

Similarly, there is no reversible error when an ALJ fails to set forth any specific limitation in his RFC assessment relating solely to a Step 2 severe impairment when other limitations account for the severe migraine impairment and no medical evidence indicates that the migraine impairment limits the claimant's ability to sustain any and all gainful employment. *See Gonzalez v. Colvin*, No. 4:12-CV-641-A, 2014 WL 61171, at *6-7 & n.9 (N.D. Tex. Jan. 6, 2014) (adopting recommendation of Mag. J.). No medical evidence in this case indicates that Claimant's migraine impairment limits her ability to perform all gainful employment and the concentration limitation found by the ALJ can be reasonably attributed to migraine headaches in addition to Claimant's mental impairment.

Finally, there is no such reversible error when the medical evidence does not support any additional limitation. *See Martinez v. Colvin*, No. 4:12-CV-542-A, 2013 WL 5227060, at *7 n.17 (N.D. Tex. Sept. 16, 2013); *Adams v. Colvin*, No. 4:12-CV-490-A, 2013 WL 5193095, at *9 n.6 (N.D. Tex. Sept. 13, 2013). As stated previously, the medical record in this case does not support any additional limitation due to Claimant's severe migraine impairment.

For all of these reasons, the Court should not find that the ALJ committed reversible error when he failed to attribute a specific limitation to Claimant's severe migraine impairment.

**B. Evaluation of Medical Evidence**

Claimant attacks the ALJ's consideration of the medical evidence on two fronts. First, she complains about the consideration given to the state agency medical expert at the reconsideration level, Dr. Geary, and also argues that the ALJ failed to properly consider all the medical opinions of her treating source, Dr. Thangam. Pl.'s Appeal at 1-2, 4-8.

18

### 1. **State Agency Medical Expert**

Claimant complains that the state agency medical expert, Dr. Geary, opined that she was limited to detailed but uninvolved instructions and that her mental limitations precluded her from returning to her previous work. *See* Pl.'s Appeal at 1-2. She argues that the ALJ improperly gave significant weight to the opinions of Dr. Geary without explaining the conflict with testimony of the VE that she could return to her past relevant work. *See id.* at 5. She contends that the conclusion of the ALJ that she can return to her prior work is unsupported due to this internal inconsistency in his decision. *Id.* She concludes that the ALJ's finding that she can return to her prior work is not supported by substantial evidence because the ALJ gave significant weight to the opinions of Dr. Geary while failing to explain why the ALJ accepted the conclusion of the VE that Claimant can return to her prior work when in the opinion of Dr. Geary she cannot do so. *See id.* at 8.

Claimant's position on this matter, however phrased, has no merit. First, while Dr. Geary set out his medical opinions in the pages preceding the assessment of Claimant's ability to perform her past relevant work ("PRW"), *see* R. 78-80 (with electronic signature on page 80), it appears that Dr. Spoor signed that portion of the reconsideration decision which includes the assessment, *see* R. 81-82. Moreover, even if Dr. Geary was responsible for the assessment portion, the record unambiguously reflects that the relevant state agency medical expert made no finding about Claimant's capacity to perform past relevant work. *See* R. 81 ("A finding about the capacity for PRW has not been made.") The expert explained that a finding regarding Claimant's capacity for PRW was "not material" because all guidelines would dictate a finding of "not disabled" given Claimant's age, education, and RFC. *Id.* That the expert identified other jobs that exist in the national economy does not indicate that he found Claimant incapable of performing her past relevant work under the facts

of this case.

Further, even if an agency expert found that Claimant was unable to return to her prior work due to her impairments, the ALJ is free to disregard that finding. An assessment of a claimant's ability to perform past relevant work is not a medical opinion. *See* 20 C.F.R. § 404.1527(d) (effective Aug. 24, 2012, to Mar. 26, 2017). And even if it were considered a medical opinion, an ALJ may accept some medical opinions and reject others. The fact that the ALJ "gave significant weight to the opinion of the state agency mental expert at the reconsideration determination," R. 20, and found mental limitations consistent with Dr. Geary's opinions, *compare* R. 14 *with* R. 80, does not compel the ALJ to accept a finding that those limitations preclude Claimant from performing her past relevant work. The ALJ was free to accept the testimony of the VE based upon the limitations set out in the questioning to the VE. Testimony of the VE provides substantial evidence to support the decision of the ALJ that Claimant can return to her prior work.

The Court should find no merit to this alleged error. It should find no inconsistency between the medical opinions of Dr. Geary and the testimony of the VE that Claimant can perform her past relevant work. It should find that substantial evidence supports the finding that Claimant can perform such work. It should find that this alleged error provides no basis to reverse or remand this action.

### 2. **Treating Source**

Claimant also argues that the ALJ did not properly consider all medical opinions of Dr. Thangam. Pl.'s Appeal at 5-8.

When considering whether a claimant is disabled, the Commissioner considers the medical

20

evidence available, including medical opinions.[16] *See* 20 C.F.R. § 404.1527(b) (effective Aug. 24,

2012, to Mar. 26, 2017). Medical opinions may come from treating sources (for example primary

care physicians), non-treating sources (physicians who perform a single examination of the claim-

ant), or non-examining sources (a physician who reviews only the claimant's medical record). *See*

*generally* 20 C.F.R. § 404.1502 (effective June 13, 2011, to Mar. 26, 2017). The Fifth Circuit has

"long held that ordinarily the opinions, diagnoses, and medical evidence of a treating physician who

is familiar with the claimant's injuries, treatments, and responses should be accorded considerable

weight in determining disability." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (quoting

*Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). Nevertheless, even opinions from a treating

source are "far from conclusive," because ALJs have "the sole responsibility for determining the

claimant's disability status." *Id.*; *accord Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994).

"After identifying relevant medical opinions of treating physicians, ALJs must determine

whether any such opinion is entitled to controlling weight." *Bentley v. Colvin*, No. 3:13-CV-4238-P,

2015 WL 5836029, at *7 (N.D. Tex. Sept. 30, 2015) (citing 20 C.F.R. § 404.1527(c)(2) and its Title

XVI counterpart, § 416.927(c)(2)). ALJs must remain cognizant that some medical records may

constitute separate medical opinions that may require individual decisions to adopt or reject. *See*

Titles II & XVI: Med. Source Ops. on Issues Reserved to the Comm'r, SSR 96-5p, 1996 WL

---

[16]As explained to claimants: "Medical opinions are statements from physicians and psychologists or other
acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your
symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrict-
ions." 20 C.F.R. § 404.1527(a)(2) (effective Aug. 24, 2012, to Mar. 26, 2017). This regulation, however, reserves some
issues to the Commissioner "because they are administrative findings that are dispositive of a case" – opinions on such
issues do not constitute medical opinions under the regulation. *Id.* § 404.1527(d). Effective March 27, 2017, § 404.1527
sets out a two-tiered approach for applying the regulation: "For claims filed (see § 404.614) before March 27, 2017, the
rules in this section apply. For claims filed on or after March 27, 2017, the rules in § 404.1520c apply." Regardless,
the pertinent version of the regulations for this appeal remains the one in effect when the ALJ issued his decision. *See*
*Young v. Berryhill*, No. 16-20786, 2017 WL 2312859, at *2 n.3 (5th Cir. May 26, 2017) (per curiam).

374183, at *4 (S.S.A. July 2, 1996).

The regulations provide a six-factor detailed analysis to follow unless the ALJ gives "a treating source's opinion controlling weight." 20 C.F.R. § 404.1527(c)(1)-(6) (effective Aug. 24, 2012, to Mar. 26, 2017).[17] "When a treating source has given an opinion on the nature and severity of a patient's impairment, such opinion is entitled to controlling weight if it is (1) 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and (2) 'not inconsistent with' other substantial evidence." *Wilder v. Colvin*, No. 3:13-CV-3014-P, 2014 WL 2931884, at *3 (N.D. Tex. June 30, 2014) (quoting *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000)); *accord* 20 C.F.R. § 404.1527(c)(2) (effective Aug. 24, 2012, to Mar. 26, 2017). Furthermore, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in [the regulations]." *Newton*, 209 F.3d at 453.

ALJs who find a treating source opinion not entitled to controlling weight must consider the six factors to properly assess the weight to give such opinions. *Newton*, 209 F.3d at 456. However, "*Newton* requires only that the ALJ 'consider' each of the [regulatory] factors and articulate good reasons for its decision to accept or reject the treating physician's opinion. The [ALJ] need not *recite* each factor as a litany in every case." *Jeffcoat v. Astrue*, No. 4:08-CV-672-A, 2010 WL 1685825,

---

[17]These factors are: (1) the examining relationship; (2) the treatment relationship, including the length of time the physician has treated the claimant, the frequency of examination by the physician, and the nature and extent of the treatment relationship; (3) support for the physician's opinions in the medical evidence of record; (4) consistency of the opinions with the record as a whole; (5) the specialization of the treating physician; and (6) any others factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c) (effective Aug. 24, 2012, to Mar. 26, 2017). Even with the 2017 regulatory amendments, these factors remain relevant for claims filed before March 27, 2017. *See* 20 C.F.R. § 404.1527(c) (effective Mar. 27, 2017).

at *3 (N.D. Tex. April 23, 2010) (emphasis added); *accord Emery v. Astrue*, No. 7:07-CV-084-BD, 2008 WL 4279388, at *5 (N.D. Tex. Sept. 17, 2008); *Burk v. Astrue*, No. 3:07-CV-899-B, 2008 WL 4899232, at *4 (N.D. Tex. Nov. 12, 2008) (accepting recommendation of Mag. J.).

The ALJ, as fact-finder, "has the sole responsibility for weighing evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). ALJs have considerable discretion in assigning weight to medical opinions and may reject the opinion of a physician when the evidence supports a contrary conclusion. *Newton*, 209 F.3d at 455-56. Additionally, for good cause shown, an ALJ may assign little or no weight to an opinion from a treating source. *Id.* "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

In this case, there appears to be no dispute that Claimant has physical and mental impairments that limit her ability to work. The dispute arises from what effect those impairments have on her functional ability to perform her prior relevant work. From the briefing, Claimant's dispute is with the ALJ's findings regarding her mental limitations, not any physical impairments. There is no need to reiterate all of the medical evidence and this recommendation will cite to the medical record as needed to address the issues raised in this appeal. With respect to Claimant's mental impairment, the ALJ gave greater weight to opinions of an examining agency expert (Dr. Geary) than to a doctor who had treated Claimant for a period of years, Dr. Thangam.

In April 2014, a month after Claimant's alleged onset of disability, Dr. Thangam referred Claimant for psychological examination by Perry M. Marchioni, Ph.D., a licensed psychologist and

a specialist in school psychology. R. 393-96. This mental status examination was generally within normal limits. *See* R. 394-95. Dr. Marchioni noted that when Claimant "does have problems, it is typically if she has removed herself from her medication or has had some significant problems resulting in an emotional outburst." R. 394. The doctor diagnosed "Bipolar Disorder II, depressed type" and stated that she appeared to be an appropriate candidate for ongoing psychiatric treatment and intensive psychotherapy." R. 396.

The next month, Claimant underwent a six-day, inpatient voluntary hospitalization because of suicidal ideation and depression. *See* R. 505-14. A mental status examination during that period revealed she was depressed but her thought processes and content were within normal limits even though she had suicidal ideations. R. 507. Her perception, attention span, recent and remote memory, and abstract reasoning were also within normal limits. *See id.* She had fair judgment and insight. *Id.* Claimant "did well in treatment," she was medically compliant, and her mood was stable. R. 509. The hospital noted the same diagnosis as Dr. Marchioni. *Compare* R. 396 *with* R. 510.

On June 19, 2014, Dr. Thangam wrote a "To whom it may concern" letter wherein he notes that "with treatment, patient's symptoms are stabilizing," but "given the chronicity of her illness and the multiple recurrences she has had, it is unlikely that she can function at her job as the symptoms would interfere with her ability to do so." R. 515. He recommended that she obtain "medical retirement" and urged the reader to "Kindly do the needful to help the patient." *Id.*

On August 7, 2014, Dr. Thangam completed a Mental Status Report using existing records. R. 516-18. At that time, he opined that Claimant's memory, attention, and concentration were within normal limits ("WNL"). R. 517. Her insight and judgment were intact. *Id.* He diagnosed Bipolar II, noted a poor prognosis, and opined that her symptoms impair her abilities to relate to others,

sustain work, and respond to change and stress in work settings.  R. 517-18.

On November 6, 2014, the Commissioner denied Claimant's claim for disability on reconsideration. *See* R. 67-82.  The Commissioner received various evidence before denying the claim. *See* R. 68-72 (listing evidence received, including medical records of Dr. Thangam and others).  The Commissioner concluded that no consultative examination was required.  R. 72.  Based on the evidence of record, Dr. Geary found that Claimant "may be somewhat limited by mental symptoms, but the impact of these limitations does not wholly compromise the capacity to function independently, effectively and appropriately on a sustained basis."  R. 75-76.  With respect to weighing opinion evidence, the Commissioner noted that "[t]here is no indication that there is medical or other opinion evidence."  R. 76.

That same day, Dr. Geary completed a mental residual functional capacity assessment and found that Claimant was moderately limited in her abilities to "understand and remember detailed instructions"; "carry out detailed instructions"; "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"; "interact appropriately with the general public"; "accept instructions and respond appropriately to criticism from supervisors"; "get along with co-workers or peers without distracting them or exhibiting behavioral extremes"; and "respond appropriately to changes in the work setting."  R. 78-80.  He provided the following summary explanation of Claimant's mental limitations: "Claimant can understand, remember, and carry out detailed but not complex instructions; make decisions; attend and concentrate for adequately extended periods; interact adequately with co-workers and supervisors; and respond appropriately to changes in routine work setting."  R. 80 (modified punctuation and removed uppercase).  In a

25

section titled "Reconciling of Source Opinion," it was noted that "[t]here is no indication that there is opinion evidence from any source." *Id.*

On December 4, 2014, Dr. Thangam completed a form medical source statement concerning Claimant's bipolar disorder. R. 536-38 (Ex. 13F). He rated various work limitations related to that disorder. R. 537-38. Without defining what he means by markedly or moderately impaired, he opined that Claimant was moderately impaired in twelve areas and markedly impaired in five areas. *See id.* He opined that Claimant was markedly impaired in her abilities "to understand and remember detailed instructions"; "maintain attention and concentration for extended periods"; "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"; "be aware of normal hazards and take appropriate precautions"; and "travel in unfamiliar places or use public transportation." *See id.* His only comment was "Patient has been experiencing chronic mood symptoms." R. 538.

On or after October 21, 2015,[18] Dr. Thangam completed a second form medical source statement concerning Claimant's bipolar disorder. R. 607-09. He made the same comment as before. *Compare* R. 538 *with* R. 609. This time he opined that Claimant was moderately impaired in two areas and markedly impaired in fifteen areas. *See* R. 608-09. In addition to the markedly impaired areas noted in the prior medical source statement, he opined that Claimant was now markedly impaired in her abilities to "carry out detailed instructions"; "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; "work in coordination

---

[18]Unlike the prior medical source statement, this one is undated but notes a last visit date of October 21, 2015. *See* R. 607-09.

with and proximity with others without being distracted by them"; "make simple work-related decisions"; "ask simple questions or request assistance"; "accept instructions and respond appropriately to criticism from supervisors"; "get along with coworkers or peers without distracting them or exhibiting behavioral extremes"; "maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness"; "respond appropriately to changes in the work setting"; and "set realistic goals or make plans independently of others." *See id.*

The ALJ in this case specifically recognized the medical source statements and the various opinions stated therein. *See* R. 17. He immediately thereafter noted "problems with these opinions." *See* R. 18. He then noted that the doctor's "own treatment notes do not reveal any evidence of any mark[ed] limitation in the ability to understand detailed instructions or maintain attention and concentration." *Id.* In addition, he noted that "other examinations in the record directly contradict this opinion." *Id.* (discussing Ex. 4F and Ex. 11F). He also viewed records showing that Claimant traveled to Colorado to visit her daughter as directly contradicting the opinion that she "was unable to travel in unfamiliar places." *See id.*

When the ALJ assigned weights to the various opinion evidence, he "gave limited weight to the opinions of Dr. Thangam," because (1) they were inconsistent with his own treatment notes, reports to other physicians, and the evidence as a whole; (2) "no other physician in the record indicated the claimant had such severe limitations"; and (3) a "possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes" or "that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians." R. 20. The ALJ further stated that the noted third stated reason is "more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current

case." *Id.*

The ALJ "gave significant weight to the opinion" of Dr. Geary because it "is consistent with the medical evidence as a whole." *Id.* Consistent with the mental RFC of Dr. Geary and considering the Claimant's bipolar symptoms, the ALJ found that she can "carry out 'detailed but uninvolved' written or oral instructions involving a few concrete variables in or from standardized situations"; (2) "respond appropriately to changes in a routine work setting," (3) "concentrate for extended periods," and (4) "frequently have interpersonal relationships in contact with the public and co-workers." *Id.*

Because the ALJ did not give controlling weight to the opinions of Dr. Thangam, *Newton* requires consideration of the six factors of § 404.1527(c) to properly assess the weight of those opinions. While the ALJ did not recite all six factors, he specifically recognized Dr. Thangam as an examining source who had treated Claimant's depression for a long time. *See* R. 15. The ALJ also questioned support for the opinions in the medical evidence of record and the consistency of the opinions with the record as a whole. *See* R. 18. The ALJ does not address whether Dr. Thangam is a specialist or note that the doctor is board certified in adult psychiatry, but he does recognize the doctor as Claimant's treating psychiatrist. The ALJ also mentions other possible factors that may impact the weight given to the opinions, i.e., sympathy for patient or an insistent patient, especially in cases like this one where the opinions depart substantially from the rest of the evidence of record. Nothing of record indicates that other factors brought to the ALJ's attention impact the weight given to Dr. Thangam's opinions. Overall the ALJ decision reflects adequate consideration of all relevant factors and the ALJ stated good reasons for rejecting the opinions of Dr. Thangam. The Court should find no error under *Newton* or § 404.1527(c).

28

Claimant correctly points out that medical source statements often contain numerous medical opinions that may require the ALJ to make individual decisions whether to adopt or reject. Here, the ALJ thoroughly set out each of the varying opinions within the two medical source statements of Dr. Thangam. *See* R. 17. The ALJ then immediately set out specific problems he viewed with respect to some of those opinions. *See* R. 18. Although the ALJ identified these specific problems, he later discussed all of the opinions globally, not as individual opinions, when he assigned limited weight to them. *See* R. 20. At that point, he stated that the opinions were inconsistent with treatment notes, reports to other medical sources, and with the record as a whole. R. 20. He also stated that "no other physician in the record indicated the claimant had such severe limitations." *Id.*

On the record before the Court, good cause exists to reject the opinions of Dr. Thangam. Opinions that are brief and conclusory may provide good cause to disregard the opinion of a treating source. *Perez v. Barnhart*, 415 F.3d 457, 466 (5th Cir. 2005). Furthermore, "the 'questionnaire' format typifies 'brief or conclusory' testimony." *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (per curiam). Even though the ALJ did not list out the factors of § 404.1527(c), he adequately considered them and he was justified in rejecting the opinions based on inconsistencies within treatment notes, reports to other medical sources, and the evidence of record as a whole. The Court should find that the ALJ did not err in the weight assigned to the opinions of Dr. Thangam. In addition, substantial evidence supports the ALJ's stated reasons for rejecting the opinions. A review of the medical record as a whole supports the weight assigned to the opinions of Dr. Thangam. This asserted error provides no basis for reversing the decision to deny benefits.

## IV. CONCLUSION

For the reasons set forth in this Report and Recommendation, the Court should find that sub-

stantial evidence supports the decision to deny benefits and that no error justifies reversal and remand. The undersigned thus **RECOMMENDS** that the district court **AFFIRM** the Commissioner's decision to deny benefits. Because the parties have not consented to proceed before a United States Magistrate Judge, the undersigned directs the Clerk of Court to **REASSIGN** this case to Senior District Judge Sam R. Cummings in accordance with normal procedures.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED this _29_ day of June, 2018.**


_____
**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**

30